UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY ADAMS,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMUNITY HOUSING PARTNERSHIP (d/b/a "HomeRise"),<br><br>        Defendant. | Case No. 23-cv-06073-WHO<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 29 |

This case arises from plaintiff Amy Adams's complaint that defendant Community Housing Partnership (d/b/a and hereafter, "HomeRise") failed to accommodate her disability and her daughter's disabilities and negligently failed to maintain a habitable living space for Adams and her family, causing her distress. HomeRise moves to dismiss all eight of Adams's claims, arguing that some are time-barred, and that the rest fail to plead sufficient facts. All of her claims are plausibly alleged and none is time-barred based on the pleadings. The motion to dismiss is DENIED.[1]

**BACKGROUND**

Adams entered into a lease with HomeRise for 1413 Flounder Court, Unit E, San Francisco, 94130 ("Unit E") in 2013, under a contract with the San Francisco Housing Authority ("SFHA"). Complaint ("Compl.") [Dkt. No. 1] ¶ 3. She rented the apartment through a Project-Based Voucher ("PBV") program. Pursuant to the PBV program, HomeRise received monthly payments of federal funds (called Housing Assistance Payments, or "HAP") from SFHA so that it

---

[1] This matter is suitable for resolution without oral argument. The hearing scheduled for April 17, 2024, is VACATED.

could subsidize rental units to low-income tenants. *Id.* ¶¶ 16-18, 32.

Taking the allegations of the Complaint as true, Adams experienced numerous habitability issues while living in Unit E until she evacuated it in November 2021. She claims that she reported these issues to HomeRise and that HomeRise failed to remedy them. *Id.* ¶¶ 44-49. For example, in 2018, Adams noticed what appeared to be mold growing on her living room ceiling. *Id.* ¶ 44. Also in 2018, Adams noticed that the carpet in Unit E was torn; at one point, she tripped on the carpet and broke her tooth. *Id.* ¶¶ 46-47. In 2020 the heater in her unit stopped working, causing Adams to purchase and use a space heater through 2021. *Id.* ¶ 48. Then in November 2021, the water heater in Unit E exploded. *Id.* ¶ 49. In 2022, the SFHA and the San Francisco Department of Building Inspection conducted separate, independent reviews of Unit E and confirmed many of the habitability issues that Adams had flagged to HomeRise. *Id.* ¶¶ 50-54. According to Adams, none of these issues was adequately fixed. *Id.*

Adams also asserts that HomeRise "harassed or threatened" her through the actions of its agents and representatives. *Id.* ¶¶ 61-84. She claims that HomeRise employees entered her home without warning, causing her distress, that HomeRise forced her to return to an uninhabitable apartment, and that it caused Adams to lose her PBV assistance in 2022 by falsely stating that she abandoned her apartment. *Id.* ¶¶ 63-65, 68, 73, 81-84.

Adams repeatedly requested accommodations for her disability and for her daughter's disabilities. *Id.* ¶¶ 88-96. HomeRise represented to her that SFHA had denied her requests, even though SFHA had not issued any denial notice. *Id.* ¶¶ 92-93. Adams filed this lawsuit on November 22, 2023, asserting: (1) breach of the implied warranty of habitability; (2) breach of the implied covenant of quiet enjoyment; (3) negligence; (4) intentional infliction of emotional distress ("IIED"); (5) violation of the Fair Housing Act ("FHA"); (6) violation of the California Fair Employment and Housing Act ("FEHA"); (7) violation of the Unruh Civil Rights Act (the "Unruh Act"); and (8) violation of California Government Code § 11135. HomeRise moves to dismiss all claims.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

1 if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This standard is not akin to a probability requirement, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

I. **ADAMS'S BREACH OF CONTRACT, NEGLIGENCE, AND IIED CLAIMS ARE TIMELY**

   A. **Claims 1 and 2: Breach of the Implied Warranty of Habitability and Implied Covenant of Quiet Enjoyment**

   Claims 1 and 2 assert breach of the implied warranty of habitability and implied covenant

3

of quiet enjoyment. Both claims are subject to a four-year statute of limitations. *See Hjelm v. Prometheus Real Est. Grp., Inc.*, 3 Cal. App. 5th 1155, 1169 (2016) (explaining that claims for breach of the implied warranty of habitability and implied covenant of quiet enjoyment are both breach of contract claims); *see also* Cal. Civ. Proc. Code § 337(a) (contract claims are subject to a four-year statute of limitations). Adams filed her complaint on November 22, 2023.

As a preliminary matter, Adams complains of some habitability issues that occurred after November 22, 2019, placing them within the four-year statute of limitations for Claims 1 and 2. *See e.g.*, Compl. ¶ 48 (alleging that the heater in Unit E was broken for "several months in 2020-2021"); *see also id.* ¶¶ 5, 49 (alleging that on or around November 27, 2021, the water heater in Unit E exploded, causing Adams and her family to evacuate). Claims arising from those problems are timely raised.

HomeRise argues that Adams knew about many of the habitability issues in Unit E before November 22, 2019, rendering them time-barred, but this is speculation that finds no traction in the facts as pleaded. *See* Motion to Dismiss ("Mot.") [Dkt. No. 29] 4-5. Nowhere in the Complaint does Adams suggest that she knew about the habitability issues that the defendant identifies (e.g., holes in the walls and the peeling tub finish) prior to November 22, 2019. *See generally* Compl. Taking the facts alleged in the Complaint to be true, as I must, HomeRise's argument is unpersuasive. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1998) (holding that a dismissal on the pleadings for failure to state a claim is only proper if the movant "clearly establishes that no material issue of fact remains to be resolved") (internal citations omitted).

Moreover, even if some conditions did begin prior to November 22, 2019, and Adams was aware of them, the continuing violation doctrine could prevent the statute of limitations from running on claims based on earlier instances of the same continued violation. *See e.g.*, *Ghazaryan v. Shabazian*, 2018 WL 6190347, at *6 (C.D. Cal. Aug. 2, 2018) (where the court refused to dismiss an implied warranty of habitability claim as untimely because the injury was ongoing). For example, even if Adams discovered the dark spots on her ceiling in Unit E in 2018, before the limitations period began, the Complaint alleges that the issues associated with those spots

4

1    continued in Unit E until well into the period covered by the statute of limitations.  *See* Compl. ¶¶
2    50, 53.  This could bring claims arising from those issues within the four-year period depending
3    on the facts developed in discovery.  *See Ghazaryan*, at *6.  The motion to dismiss Claims 1 and 2
4    is DENIED.

### B. Claim 3: Negligence

Claim 3 asserts negligence.  The statute of limitations is two years.  *See* Cal. Civ. P. Code § 335.1.  In California, the default rule for accrual is that "an action accrues on the date of injury." *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1109 (1988).  Where appropriate, this default rule is modified by the discovery rule, which "provides that the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause." *Id.*  In applying the discovery rule, "[a] plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her." *Id.*  In effect, the discovery rule provides that a limitations period "does not commence until a plaintiff discovers, or reasonably could have discovered, his claim." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1147 (9th Cir. 2002).

Adams's negligence claim, as pleaded, is based in part on events that occurred on or after November 22, 2021, within two years of filing the Complaint.  *See e.g.*, Compl. ¶ 49 (stating that the water heater in Unit E exploded on or about November 27, 2021); *see also id.* ¶¶ 50, 53 (stating that HomeRise continued to be negligent in repairing the unit).  Adams claims that these incidents and HomeRise's failure to remedy them caused her significant emotional distress, physical discomfort, and other damages.  *See id.* ¶¶ 67-79, 113-119. Adams's negligence claim, filed on November 22, 2023, is timely.  The motion to dismiss Claim 3 is DENIED.

### C. Claim 4: Intentional Infliction of Emotional Distress

Claim 4 asserts intentional infliction of emotional distress (IIED).  Such claims are subject to a two-year statute of limitations. *See* Code Civ. Proc., § 335.1; *Pugliese v. Superior Court*, 146 Cal. App. 4th 1444, 1450 (2007).  "A cause of action for intentional infliction of emotional distress accrues, and the statute of limitations begins to run, once the plaintiff suffers severe emotional distress as a result of outrageous conduct on the part of the defendant." *Wassmann v. S.*

5

*Orange Cnty. Cmty. Coll. Dist.*, 24 Cal. App. 5th 825, 852–53 (2018) (internal quotations omitted).[2]

Adams's IIED claim, as pleaded, is based at least in part on events that occurred on or after November 22, 2021. *See e.g.*, Compl. ¶ 121 (stating that on November 27, 2021, the water heater in Unit E exploded, making it necessary for Adams and her family to evacuate); *see also id.* ¶¶ 82-85 (stating that starting in December 2021, HomeRise employees harassed Adams by pressuring her into moving back into Unit E before repairs were complete, and by falsely reporting to SFHA that she had abandoned the unit). These events occurred within two years of Adams filing her complaint. Adams's IIED claim, filed on November 22, 2023, is timely. The motion to dismiss Claim 4 is DENIED.

## II. ADAMS'S FAILURE TO ACCOMMODATE CLAIMS ARE WELL-PLEADED AND TIMELY

### A. Claims 5 and 6: Violation of the FHA and FEHA

Claims 5 and 6 of the Complaint assert that HomeRise violated the FHA and FEHA by failing to reasonably accommodate the disabilities of Adams and her daughter. The Ninth Circuit has repeatedly held that FHA and FEHA claims are both "highly fact-specific," and thus "require[e] case-by-case determination," making them inappropriate for dismissal 'solely on the pleadings.'" *See McGary v. City of Portland*, 386 F.3d 1259, 1264 (9th Cir. 2004) (quoting *United States v. Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1419 (9th Cir. 1994)).

Adams alleges, and HomeRise does not dispute, that both she and her daughter suffer from disabilities. *See* Compl. ¶¶ 2, 22-26. She claims that she made reasonable accommodation requests, that those requests were necessary to her enjoyment of Unit E, and that HomeRise denied each request. *Id.* ¶¶ 87-93.

HomeRise argues the merits of Adams's claims by challenging their factual bases. *See*

---

[2] The elements of a cause of action for intentional infliction of emotional distress are (1) the defendant engages in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffers severe or extreme emotional distress; and (3) the defendant's outrageous conduct is the actual and proximate cause of the plaintiff's emotional distress. *Hughes v. Pair*, 46 Cal. 1035, 1050 (2009).

6

Mot. 9-11. It contends that Adams's PBV was terminated by SFHA because of the death of her grandson, and not by any action of HomeRise. *See id.* 9:25-10:4; *see also* Defendant's Request for Judicial Notice ("Def's RJN") [Dkt. No. 29-2]. In support, HomeRise asks that I take judicial notice of—and dismiss Adams's FHA and FEHA claims on the basis of—a document seemingly showing that Adams's housing assistance payment contract was terminated because of the "death of a single member house-hold." *See* Def's RJN, Ex. D. Adams opposes judicial notice and points out that the document incorrectly refers to Adams's own death rather than the death of her grandson. *See* Plaintiff's Opposition to Defendant's RJN [Dkt. No. 31-1] 4. Where administrative records are incomplete or discuss disputed facts, as here, those records cannot be judicially noticed "without converting the motion to one for summary judgment." *Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1017 (N.D. Cal. 2018). As the document is seemingly incorrect, has not been authenticated, and is offered for its truth, I will not take judicial notice of it now.

HomeRise also argues that Adams's request for accommodation was unreasonable because it contends that there were "three individuals" living in Unit E, not six as alleged in the Complaint. *See* Mot. 8:27-9:16. To support this argument, it points me toward a statement that Adams appears to have made to the SFHA in March 2016 indicating that her older children moved out in 2015, and she wished for them to be removed from her lease. *See* Def's RJN, Ex. C. Again, the document is not authenticated and HomeRise clearly offers it for the truth of the matter it asserts. I will not take judicial notice of it now.

HomeRise's factual assertions must await a later stage in this case; Adams has pleaded that her requests for accommodation were reasonable. *See Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1157 (9th Cir. 2003) (holding that an accommodation is reasonable if it "imposes no fundamental alteration on the nature of the program or undue financial or administrative burdens"); *see also* Compl. ¶¶ 136, 144 (alleging that the request for a larger unit was reasonable because HomeRise had other, larger units available at the time of the request and could have relocated her with relative ease). The motion to dismiss Claims 5 and 6 is DENIED.

### B. Claim 7: Unruh Civil Rights Act Violation

Claim 7 asserts that HomeRise violated the Unruh Civil Rights act by failing to provide

7

reasonable accommodations upon Adams's requests. The Unruh Act provides, in relevant part:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b). Adams claims that she made requests for reasonable accommodations on several occasions, but that HomeRise repeatedly failed to accommodate her disabilities and her daughter's disabilities. *See* Compl. ¶¶ 90-95, 147-154.

The Unruh Civil Rights Act does not contain an express statute of limitations. *See Kramer v. Regents of Univ. of Cal.*, 81 F. Supp. 2d 972, 976-77 (N.D. Cal. Jun. 1, 1999) (holding that because the Unruh Act does not have its own statute of limitations, courts must determine which statute of limitations is appropriate). To determine the applicable statute of limitations, courts in this circuit determine whether the underlying claim is statutory or derived from the common law. If it is statutory, then California's three-year limitations period for statutory claims applies. If it is derived from common law, then California's two-year limitations period for personal injury claims applies. *See Hernandez v. Sutter West Capital*, 2010 WL 3385046, at *2 (N.D. Cal. Aug. 26, 2010) (citing *Kemp v. Regents of Univ. of Cal.,* No. C–09–4687 PJH, 2010 WL 2889224, at *6 (N.D. Cal. July 22, 2010)).

Courts in this circuit have found that claims for violation of statutes that protect against discrimination in provision of services by public entities do not derive from common law and are therefore subject to the three-year statute of limitations. *See e.g.*, *Kemp*, 2010 WL 2889224, at *7 (finding that claims under ADA Title II, which covers nondiscrimination in provision of services by public entities, are not derived from common law). Claim 7 is based in a violation of a statute (the Unruh Act) that protects against discrimination in provision of services by a public entity (HomeRise, as discussed in the next section). A three-year statute of limitations applies.

Adams requested reasonable accommodations for the first time on or around June 30, 2021. *See* Compl. ¶ 92. She did not receive those accommodations and was told by HomeRise agents that SFHA denied her request. *See id.* ¶ 90. As alleged, her Unruh Act claims fall within the applicable three-year statute of limitations. *See* Compl. ¶¶ 90, 150. The motion to dismiss

1 Claim 7 is DENIED.

## III. HOMERISE IS SUBJECT TO CAL. GOV. CODE § 11135 LIABILITY

Claim 8 asserts that HomeRise violated California Government Code section 11135. Section 11135 provides, in relevant part, that:

> No person in the State of California shall, on the basis of sex, race, color, religion, ancestry, national origin, ethnic group identification, age, mental disability, physical disability, medical condition, genetic information, marital status, or sexual orientation, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state.

Cal. Gov. Code § 11135. As indicated above, Section 11135 applies to any program or activity administered "by the state or by any state agency, [that] is funded directly by the state, or [that] receives any financial assistance from the state." *Id.* "State financial assistance" is defined as including any contract "by which a State agency provides or otherwise makes available aid to recipients in the form of . . . funds." *See* Cal. Code. Regs. Tit. 2, § 11150. As relevant here, SFHA is "a separate state agency." *McLemore v Marin Hous. Auth.*, No. 20-CV-5431-JD, 2021 WL 4124210 at *2 (N.D. Cal. Sept. 9, 2021). Because it provides the housing assistance payments for the PBV program in which Adams participated, HomeRise is subject to Section 11135.

HomeRise argues that because the source of the PBV funds is the federal government, not the State of California, Section 11135 does not apply to it. *See* Mot. 8. But Section 11135 does not require that funding originate in the State, only that it come from a program conducted, operated, or administered by the State. The SFHA is a state agency that provided the PBV funds to HomeRise. The implementing regulation of Section 11135, quoted in the preceding paragraph, defines "[s]tate financial assistance" in a way that clearly encompasses HomeRise's conduct. *See* Cal. Code. Regs. Tit. 2, § 11150. The motion to dismiss Claim 8 is DENIED.

**CONCLUSION**

For the reasons provided above, the motion to dismiss is DENIED as to all claims. Defendant shall answer the Complaint within fourteen days.

**IT IS SO ORDERED.**

Dated: April 15, 2024

William H. Orrick
United States District Judge